IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MARK A. RUDOLPH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  3:05cv474-CSC |
| | ) | (WO) |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

Plaintiff Mark Rudolph ("Rudolph") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*. alleging that he was unable to work because of a disability.  His application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

---

[1]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3).  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** On January 24, 2003, Rudolph filed his application for benefits alleging disability due to back and neck pain, asthma and muscle spasms. (R. 86). He was

---

[3] *McDaniel v. Bowen,* 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

33 years old on the date of onset and has completed the eleventh grade.[4]  (R. 15).  The plaintiff's prior work experience includes work as a carpenter's helper, construction worker, housekeeper and mechanic.  (R. 22).   Following the hearing, the ALJ concluded that the plaintiff has severe impairments of thoracic and lumbar disc disease, asthma, dysthymic disorder, and status post excision of axillary mass due to lymphadenitis.  (R. 18).  The ALJ concluded that Rudolph was unable to perform his past relevant work,  but relying on the testimony of a vocational expert, concluded that there were a significant number of jobs in the national economy that the plaintiff could perform. (R. 15).  Therefore, the ALJ concluded that Rudolph was not disabled.

**B.  Plaintiff's Claims.**  In his brief, Rudolph presents two issues for the Court's review.  As stated by him, the issues are as follows.

1.  Should this case be remanded under sentence six of 42 U.S.C. Section 405(g) for consideration of additional evidence?

2.  Did the Administrative Law Judge err in failing to adequately develop the record regarding the Appellant's physical abilities and mental abilities?

(Br. for Plaintiff/Appellant, Doc. # 20).

### IV.  Discussion

1.  **New Evidence.**  The first issue for the court to consider is whether this matter should be remanded to Commissioner under 42 U.S.C. § 405(g) for consideration of new

---

[4]  Rudolph took regular classes and received grades ranging from A's to C's.  (R. 261).

evidence.  The ALJ held the administrative hearing in this case on September 22, 2004, (R. 298), and issued his decision on October 28, 2004.  (R. 10).  On March 17, 2005, the Appeals Council declined to review the decision of the ALJ.  (R. 5).  On February 23, 2006, the plaintiff filed his brief in which he asserts that, in May 2005, he was pre- and post-operatively diagnosed with lumbar spinal stenosis.  (Pl's Br. at 10).  Specifically, the new evidence consists of a May 11, 2005, treatment note from Dr. Bradley in which Dr. Bradley opines that Rudolph is suffering from "Lumbar spinal stenosis and disc herniation at L4-5 . . . [and] L5-S1 stenosis."  (Doc. # 28 at 1).  As a result, the plaintiff underwent a partial L4-L5 laminectomy with decompression on June 9, 2005.  (*Id*. at 3).  Although Rudolph suffered a lumbar spinal leak post surgery, a lumbar epidural blood patch corrected this condition. Rudolph was discharged "in good condition."  (*Id*. at 5 & 8).

Section 405(g), in part, permits courts to remand a case to the Social Security Administration for consideration of new evidence under certain circumstances.  In order to prevail on a claim for remand under § 405(g) a claimant must show that (1) there is new, non-cumulative evidence; ( 2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative hearing.  *See Vega v. Comm'r of Social Sec.,* 265 F.3d 1214, 1218 (11th Cir. 2001); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998); *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).

In this case, Rudolph argues that evidence of his diagnosis of and subsequent surgery

for lumbar spinal stenosis constitutes new evidence sufficient to warrant remand.  Applying the three-prong remand standard, this evidence is new because it was not before the ALJ, nor was it available, at the time of the hearing.  The diagnosis and surgery came eight months after the administrative hearing in this case.  Thus, the court concludes that the evidence is new.

However, Rudolph must also establish that the evidence is non-cumulative which he fails to do.  Although Rudolph recites the applicable law, he does not apply the law to the facts of this case and he makes no argument regarding the cumulative nature of the evidence. Indeed, a review of the record demonstrates that the diagnosis of lumbar spinal stenosis is cumulative.

The ALJ concluded that Rudolph suffers from the severe impairment of thoracic and lumbar disc disease, (R. 18), and it is undisputed that Rudolph suffers from chronic back pain as a result of this condition.  X-rays in 2001 demonstrate that Rudolph has some "mild subluxation at C4-5" and that there "may be some early intervertebral disc compression at L1-2, L2-3, and L3-4."  (R. 161-162).  An MRI also indicated "moderate subluxation (misalignment)."  (R. 162).  Rudolph was diagnosed with lumbar disc syndrome, lumbar facet syndrome, lumbar subluxation, and thoracic disc syndrome.  (R. 162).

In March 2002, Rudolph's back condition was not so severe that it prevented him from skating.  (R. 167).  In April 2003, Rudolph had "minimal SI joint tenderness" and his gait was "within normal limits."  (R. 191). X-rays in September 2003 indicated that Rudolph

had "mild disc space loss at L5-S1," "mild sclerosis of facet joints bilaterally," and "mild degenerative changes at L5-S1." (R. 240). Finally, in April 2004, immediately following a consultative examination, Rudolph was able to climb underneath his car to repair it. (R. 263).

The new evidence upon which the plaintiff now relies consists of treatment notes from Dr. Bradley in which Dr. Bradley opines that Rudolph is suffering from "Lumbar spinal stenosis and disc herniation at L4-5 . . . [and] L5-S1 stenosis, " and evidence that the plaintiff underwent surgery on June 9, 2005. (Doc. # 28). The mere fact that Rudolph underwent surgery is insufficient to render the evidence non-cumulative because the new evidence does not demonstrate that the surgery significantly altered his condition. In fact, the medical evidence suggests that Rudolph was discharged "in good condition." (*Id*. at 5 & 8). The ALJ fully considered the plaintiff's back condition and concluded that the evidence did not "support his claims of significant chronic pain." (R. 20). Accordingly, the court concludes that the evidence does not meet the first prong of the standard because although it was new, it was also cumulative.

Furthermore, the court concludes that evidence of a diagnosis of lumbar spinal stenosis and surgery is not material because there is not a reasonable probability that these two facts would have changed the decision of the ALJ. First, the plaintiff makes no argument regarding this prong of the analysis. Next, and perhaps more importantly, a review of the medical records demonstrates that the surgery was successful and the plaintiff was

7

discharged in good condition.  This evidence supports the ALJ's determination that Rudlph's back condition is not disabling.  Consequently, the plaintiff has failed to demonstrate that there is a reasonable possibility that the new evidence would change the administrative result.  Accordingly, the court concludes, based on the record in this case, the plaintiff has failed to demonstrate that evidence of surgery and a diagnosis of lumbar spinal stenosis are material.  Consequently, the court concludes that the evidence does not satisfy all three requisite criteria for remand under § 405(g) and therefore, remand is not proper.

Finally, the evidence is presented for the first time to this court and thus is irrelevant to the court's determination of whether the ALJ's decision was supported by substantial evidence.  Because the court reviews "the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision," *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999), the mere fact that Rudolph underwent surgery eight months after the ALJ's decision, is simply not relevant or probative of whether substantial evidence supports the ALJ's decision that the plaintiff was not disabled from December 2, 2002 until the date of the administrative decision.

**2.    Plaintiff's Mental Abilities**.[5]  The plaintiff contends that the Commissioner erred in failing to more fully develop the record regarding his mental abilities.  Rudolph

---

[5]  Although the plaintiff includes in this issue the ALJ's failure to adequately develop the record regarding the plaintiff's physical abilities, he makes no argument and presents no facts that challenge the ALJ's determination regarding his physical capacities.  Consequently, the court will focus its discussion on the plaintiff's arguments regarding his mental abilities.

relies on an April 5, 2004, vocational rehabilitation evaluation conducted by Dr. René Britt. Dr. Britt administered the Wechsler Intelligence Scale - 3rd Edition (WAIS-3rd) to Rudolph. (R. 260- 263). Rudolph obtained a verbal scale IQ score of 73, a performance scale IQ score of 74, and a full scale IQ score of 71.[6] (R. 262). Dr. Britt concluded that Rudolph's scores "fall in the Borderline Range." (*Id*). However, Dr. Britt questioned the validity of these scores. (R. 263).

> These results are questionable. Mr. Rudolph's test results may have been invalidated based on two observations. Firstly, there was a discrepancy between his stated physical problems and his observed motor activity. Although he was dramatic in presentation about his physical pain and limitations, he was noted to be repairing his car that broke down at the testing office with a physical fluidity that did not reflect his degree of reported discomfort or the degree of observed physical distress during testing. He literally had climbed underneath the car to repair it. Secondly, he repeatedly stated that he will not be able to work again in any setting due to his physical problems and his observed motivation was very poor. It is likely that Mr. Rudolph is experiencing psychiatric and cognitive problems, but it is difficult to determine the extent given his performance today.

(*Id*.). Dr. Britt concluded that Rudolph was malingering. (R. 260).

The ALJ concluded that Rudolph did not satisfy the requirement of Section 12.05C of the Commissioner's Listing of Impairments primarily because Rudolph's IQ scores were not, in and of themselves, determinative of mental retardation. Under section 12.05C, a person is disabled if he has a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment which imposes additional significant limitations of

---

[6] In his written assessment, Dr. Britt stated that Rudolph earned a "Full Scale IQ of 62." (R. 262). It appears that this is merely a scrivener's error as Dr. Britt's report clearly indicates that Rudolph received a scaled score of 62 and an IQ index score of 71.

function. 20 C.F.R. Pt. 220, App. 1.  Listing 12.05.  Rudolph obtained a verbal scale I.Q. score of 73, a performance scale I.Q. score of 74, and a full scale I.Q. score of 71.  Even if the court were to ignore the fact that Dr. Britt questioned the validity of the scores, these results clearly fall outside the parameters of section 12.05C.

The law of this circuit establishes that a claimant's IQ score is not conclusive evidence of a disability when it is inconsistent with other evidence of the claimant's daily activities and behavior.  *See Popp v. Heckler*, 779 F.2d 1497 (11th Cir. 1986).  In *Popp*, the Eleventh Circuit Court of Appeals held that the Listings for mental retardation do not require the Commissioner to make a finding of mental retardation based upon the results of an I.Q. test alone. However, the test results must be considered in context with other evidence including the daily activities and behavior of the claimant.  *Id.* at 1499.  If the ALJ concludes from other evidence in the record that the IQ scores are inconsistent with the claimant's actual intellectual functioning, the ALJ may properly find that the claimant does not meet the criteria of § 12.05.  The ALJ's decision is reviewable by the court for substantial evidence.

In this case, the ALJ concluded that the plaintiff's IQ scores are inconsistent with his educational, social and work history.  (R. 21).  Substantial evidence supports the ALJ's conclusion. Rudolph completed the eleventh grade in regular, non-special education classes. He received grades ranging from A's to C's.  He dropped out of school in the twelfth grade because he got into a fight with the principal.  Rudolph did not apply for, nor has he alleged at any point in the administrative proceedings, disability based on sub-average intellectual

10

functioning.  Furthermore, and perhaps more importantly, the record does not indicate, and Rudolph does not allege, that his borderline intellectual functioning significantly impairs his ability to work.  Finally, Rudolph does not assert that his alleged sub-average general intellectual functioning manifested itself before age twenty-two.  *See Lowery v. Sullivan*, 979 F.2d 835, 838 (11th Cir. 1992).  Given this evidence, the court concludes that the ALJ's determination that Rudolph's intellectual deficiencies did not significantly impair his ability to work, and he did not satisfy the requirements of section 12.05, was supported by substantial evidence.

## V.  Conclusion

The court has carefully and independently reviewed the record and concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed. Thus, this case will be dismissed with prejudice.

A separate order will issue.

Done this 4th day of August, 2006.


        /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

11